# United States Court of Appeals for the Federal Circuit

---

**ROBERT BOSCH LLC,**
*Plaintiff-Appellant,*

v.

**PYLON MANUFACTURING CORP.,**
*Defendant-Appellee.*

---

2011-1096

---

Appeal from the United States District Court for the District of Delaware in Case No. 08-CV-542, Judge Sue L. Robinson.

---

Decided: October 13, 2011

---

MARK A. HANNEMANN, Kenyon & Kenyon LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were MICHAEL J. LENNON and JEFFREY S. GINSBERG. Of counsel was SUSAN A. SMITH.

GREGORY L. HILLYER, Feldman Gale, P.A., of Philadelphia, Pennsylvania, argued for defendant-appellee. With him on the brief were NICOLE D. GALLI; and JAMES A. GALE, of Miami, Florida

---

Before BRYSON, O'MALLEY, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.
 Dissenting opinion filed by *Circuit Judge* BRYSON.

O'MALLEY, *Circuit Judge.*

Robert Bosch LLC ("Bosch") appeals from the order of the United States District Court for the District of Delaware, denying Bosch's post-trial motion for entry of a permanent injunction. Because the district court abused its discretion when it denied a permanent injunction on this record, we reverse and remand with instructions to enter an appropriate injunction.

## BACKGROUND

This is a patent infringement case involving windshield wiper technology, specifically beam-type wiper blades ("beam blades"). Beam blades are a relatively new technology that offers several advantages over conventional, or "bracketed," wiper blades, including more evenly distributed pressure across the length of the blade and better performance in inclement weather. Part of Bosch's business involves developing wiper blades, and Bosch owns patents covering various aspects of beam blade technology. In addition to its research and development efforts, Bosch sells blades to both original equipment manufacturers and aftermarket retailers. Pylon Manufacturing Corp., LLC ("Pylon") also sells beam blades and has competed with Bosch for business from retailers such as Wal-Mart.

In August 2008, Bosch sued Pylon in the District of Delaware, alleging infringement of U.S. Patent Nos. 6,292,974 ("the '974 Patent"), 6,675,434 ("the '434 Patent"), 6,944,905 ("the '905 Patent"), and 6,978,512 ("the

'512 Patent").[1] On June 9, 2009, during a hearing regarding Bosch's alleged failure to produce certain financial data, the court informed the parties of its preference for bifurcating the issue of damages and suggested that this procedural mechanism may address the parties' discovery dispute. In response, Pylon moved to bifurcate the issues of damages and willfulness, a request that Bosch opposed. The district court granted Pylon's motion, noting its "determin[ation] that bifurcation is appropriate, if not necessary, in all but exceptional patent cases." Memorandum Order, *Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 08-cv-542 (D. Del. Aug. 26, 2009), ECF No. 123.

The parties subsequently moved for summary judgment with respect to the validity and infringement of various claims. On March 30, 2010, the district court granted Pylon's motion for summary judgment of noninfringement of the '512 Patent, but denied its motion for summary judgment of invalidity of the '974 and '512 Patents. The court also granted Bosch's motions for summary judgment of: (1) infringement of claims 1 and 8 of the '974 Patent; and (2) no inequitable conduct and no invalidity for derivation as to the '905 and '434 Patents. The remaining issues were tried to a jury, which found: (1) claim 13 of both the '905 and '434 Patents valid and infringed; (2) claims 1 and 5 of the '434 Patent infringed, but invalid for obviousness; and (3) claims 1 and 8 of the '974 Patent invalid based on obviousness and derivation.

In light of the jury's determination that Pylon infringed valid claims of the '905 and '434 Patents, Bosch moved for entry of a permanent injunction. In a memo-

---

[1] In its infancy, the case also included claims that Pylon had engaged in false advertising and a counterclaim alleging Bosch's infringement of a Pylon patent. These claims were dismissed before trial and are not at issue in this appeal.

randum opinion dated November 3, 2010, the court denied the motion on grounds that Bosch failed to show that it would suffer irreparable harm. At the outset of its analysis, the district court noted an apparent difficulty faced by courts "struggling to balance the absence of a presumption of irreparable harm with a patentee's right to exclude," and observed that other courts had "frequently focused upon the nature of the competition between plaintiff and defendant in the relevant market in the context of evaluating irreparable harm and the adequacy of money damages." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 748 F. Supp. 2d 383, 407 (D. Del. 2010). The court also discerned a tendency among district courts to award permanent injunctions: (1) "under circumstances in which the plaintiff practices its invention and is a direct market competitor"; and (2) where the plaintiff's "patented technology is at the core of its business . . . ." *Id.* at 407-08.

With these factors in mind, the court proceeded to assess the nature of the competition between Bosch and Pylon. In doing so, the court identified deficiencies it perceived in Bosch's presentation of the competitive landscape, including a failure to "provide[] a clear, summary-level overview of the relevant market" and "a breakdown illuminating [the parties'] relative market percentages." *Id.* at 408. The court also focused on the fact that "[t]his is not a clear case of a two-supplier market wherein a sale to Pylon necessarily represents the loss of a sale to Bosch" and "wiper blades alone are not at the core of [Bosch's] business." *Id.* at 408. Based on: (1) its conclusion that Bosch "fail[ed] to define a relevant market"; (2) the "existence of additional competitors"; and (3) the "non-core nature of Bosch's wiper blade business in relation to its business as a whole," the court concluded that Bosch failed to show it would suffer irreparable harm. *Id.* Finding the absence of irreparable harm fatal

to Bosch's motion, the court denied the request for an injunction without addressing the remaining equitable factors of the permanent injunction inquiry.

Bosch timely appealed the district court's interlocutory order, asserting jurisdiction under 28 U.S.C. §§ 1291 and 1292.

JURISDICTION

Whether this court has jurisdiction over an appeal taken from a district court judgment is a question of "Federal Circuit law, not that of the regional circuit from which the case arose." *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1292 (Fed. Cir. 2005) (citing *Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed. Cir. 1987) (en banc)). Section 1292(a)(1) provides that "the courts of appeals shall have jurisdiction of appeals" from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." 28 U.S.C. § 1292(a)(1). Section 1292(c)(1), moreover, confers upon this court exclusive jurisdiction over such appeals if we would otherwise have jurisdiction under § 1295. Thus, on its face, the district court's order denying Bosch's request for a permanent injunction in a patent case falls within the scope of § 1292(a)(1), (c)(1). *See Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1300 (Fed. Cir. 2005) ("Medtronic appeals from an order permanently enjoining Medtronic from infringing the '555 patent. On its face, the order falls within the scope of § 1292(a)(1), (c)(1).").

Pylon admits that § 1292(a)(1) provides a sound basis for jurisdiction, but contends that jurisdiction under that section "has not been established." Appellee's Br. 1. According to Pylon, Bosch was required to show that the order will have "a serious, perhaps irreparable consequence" and that the order can be "effectually challenged"

only "by immediate appeal." *Id.* at 20 (quoting *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 379 (1987) and *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981)). Pylon argues that Bosch failed to make such a showing and that we should, accordingly, "decline to exercise jurisdiction over this appeal at this time and dismiss with leave to refile after final judgment is entered below." *Id.* at 23.

Bosch counters that the additional hurdles cited by Pylon apply only in cases involving orders that do not expressly deny an injunction, but have the effect of denying injunctive relief. Because its appeal is from an order "explicitly" denying a request for an injunction, Bosch contends that it need not make any additional showing for jurisdiction to attach under § 1292(a)(1). We agree.

This court has made clear that a party appealing an order that expressly grants or denies a permanent injunction need not also demonstrate that the order will have "a serious, perhaps irreparable consequence" and that "the order can be effectively challenged only by immediate appeal." *See Cross Med. Prods.*, 424 F.3d at 1300. When confronted with this issue in *Cross Medical*, we explained that these "*Carson* requirements" apply only where there is no order specifically granting or denying injunctive relief, but the appellant argues that the appealed order has the effect of granting or denying such relief. *Id.* We also observed that the "Supreme Court [had] confirmed our reading of *Carson* as applying only to orders that have 'the practical effect of granting or denying injunctions.' " *Id.* at 1301 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-288 (1988) ("Section 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have serious, perhaps irreparable,

consequence." (internal quotation marks omitted)).  It is, thus, well-established that, "if the district court's order expressly grants [or denies] an injunction, the order is appealable under § 1292(a)(1), without regard to whether the appellant is able to demonstrate serious or irreparable consequences." *Id.* (quoting 19 James Wm. Moore et al., *Moore's Federal Practice* ¶ 203.10[2][a], at 14 (3d ed. 2005)).

In this case, the district court entered an order expressly denying Bosch's motion for entry of a permanent injunction.  The *Carson* requirements are, thus, inapplicable, and we have jurisdiction under 28 U.S.C. § 1292(a)(1).[2]

STANDARD OF REVIEW

This court reviews the denial of a permanent injunction for abuse of discretion.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010).  A district court abuses its discretion when it acts "based upon an error of law or clearly erroneous factual findings" or commits "a clear error of judgment." *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1352 (Fed. Cir. 2009).  A clear error of judgment occurs when the "record contains no basis on

---

[2]    In the alternative, Pylon argues that we should stay this appeal pending the district court's entry of final judgment and the outcome of the parties' merits appeal "so as to avoid any unnecessary duplication of efforts." Appellee's Br. at 24.  Pylon cites no cases in which we have taken such measures, let alone a case, such as this, where the infringer did not post a bond.  Pylon has not volunteered to post a bond and we decline its invitation to grant what would, in effect, be an unbonded stay of indefinite duration – particularly in light of Bosch's unrebutted evidence of Pylon's inability to satisfy a judgment. On remand, Pylon remains free to seek a stay of the injunction and, if successful, post an appropriate bond.

which the district court rationally could have made its decision or if the judicial action is arbitrary, fanciful or clearly unreasonable." *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 (Fed. Cir. 1989) (quoting *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1572 (Fed. Cir. 1988) (Bissel, J., concurring)). "To the extent the court's decision is based upon an issue of law, we review that issue de novo." *Ecolab*, 569 F.3d at 1352 (quoting *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006)).

## DISCUSSION

Consistent with traditional equitable principles, a patentee seeking a permanent injunction must make a four-part showing:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Prior to the Supreme Court's decision in *eBay*, this court followed the general rule that a permanent injunction will issue once infringement and validity have been adjudged, absent a sound reason to deny such relief. *See, e.g.*, *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988)). In addition, at least in the context of preliminary injunctive relief, we applied an express presumption of irreparable harm upon finding that a plaintiff was likely to succeed on the merits of a patent infringement claim. *See Smith*

*Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("We hold that where validity and continuing infringement have been clearly established, as in this case, immediate irreparable harm is presumed." (footnotes omitted)). Based on our case law, district courts also have applied a presumption of irreparable harm following judgment of infringement and validity to support the issuance of permanent injunctions. *See, e.g.*, *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528-29 (D. Del. 2003) (entering a permanent injunction after noting that irreparable harm is presumed in patent cases); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 106 F. Supp. 2d 696, 701 (D.N.J. 2000) (same).[3]

In *eBay*, the Supreme Court made clear that "broad classifications" and "categorical rule[s]" have no place in this inquiry. 547 U.S. at 393. Instead, courts are to exercise their discretion in accordance with traditional principles of equity. *Id.* at 394. The Supreme Court, however, did not expressly address the presumption of irreparable harm, and our subsequent cases have not definitively clarified whether that presumption remains intact. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702 (Fed. Cir. 2008) ("It remains an open question whether there remains a rebuttable presumption of irreparable harm following *eBay*." (internal quotation

---

[3] Indeed, applying this presumption to permanent injunctions was entirely reasonable at the time, given that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (citation omitted).

marks and citation omitted)).[4] Our statements on this topic have led one district court judge to conclude that "the presumption of irreparable harm is at best on life support." *Red Bend Ltd. v. Google, Inc.*, 2011 WL 1288503, at *18 (D. Mass. Mar. 31, 2011) (citations omitted). We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief. In so holding, we join at least two of our sister circuits that have reached the same conclusion as it relates to a similar presumption in copyright infringement matters. *See Perfect 10, Inc. v. Google, Inc.*, --- F.3d ---, 2011 WL 3320297, at *4 (9th Cir. Aug. 3, 2011) ("[W]e conclude that our longstanding rule that a showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm is clearly irreconcilable with the reasoning of the Court's decision in *eBay* and has therefore been effectively overruled." (internal quotation marks and citations omitted)); *Salinger v. Colting*, 607 F.3d 68, 76-78 (2d Cir. 2010) (finding that *eBay* abrogated the presumption of irreparable harm in copyright cases).

Although *eBay* abolishes our general rule that an injunction normally will issue when a patent is found to have been valid and infringed, it does not swing the pendulum in the opposite direction. In other words, even though a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to support a request for a permanent injunction, it does not follow

---

[4]  In an unpublished decision, we stated without analysis, and without citation to our other cases describing the issue as an open question, that *eBay* discarded the presumption of irreparable harm. *Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. Appx. 297, 301 (Fed. Cir. Dec. 16, 2009).

that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude. Indeed, this right has its roots in the Constitution, as the Intellectual Property Clause of the Constitution itself refers to inventors' "*exclusive* Right to their respective . . . Discoveries." U.S. Const. art. I, § 8, cl. 8 (emphasis added). Although the Supreme Court disapproved of this court's absolute reliance on the patentee's right to exclude as a basis for our prior rule favoring injunctions, that does not mean that the nature of patent rights has no place in the appropriate equitable analysis. *See eBay*, 547 U.S. at 392 ("According to the Court of Appeals, this statutory right to exclude alone justifies its general rule in favor of permanent injunctive relief. But the creation of a right is distinct from the provision of remedies for violations of that right."). While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (finding in a post-*eBay* decision that, "[i]n view of that right [to exclude], infringement may cause a patentee irreparable harm not remediable by a reasonable royalty").

The abolition of categorical rules and the district court's inherent discretion to fashion equitable relief, moreover, also do not mandate that district courts must act on a clean slate. "Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *eBay*, 547 U.S. at 395 (Roberts, J., concurring) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). In this area, as others, "a page of history is worth a volume of logic" when "it comes to discerning and applying those standards." *Id.* (quoting *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921) (Holmes, J.)). This wisdom is particularly apt in traditional cases, such as

this, where the patentee and adjudged infringer both practice the patented technology. *See id.* at 396–97 (Kennedy, J., concurring) (contrasting the relevant considerations in traditional patent infringement actions with certain cases arising now "in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees," "[w]hen the patented invention is but a small component of the product," and those involving "the burgeoning number of patents over business methods" (citation omitted)).

Over the past quarter-century, this court has encountered many cases involving a practicing patentee seeking to permanently enjoin a competitor upon an adjudication of infringement. In deciding these cases, we have developed certain legal standards that inform the four-factor inquiry and, in particular, the question of irreparable harm. While none of these standards alone may justify a general rule or an effectively irrebuttable presumption that an injunction should issue, a proper application of the standards to the facts of this case compels the conclusion that Bosch is entitled to the injunction it seeks. It is in ignoring these standards, and supplanting them with its own, that the district court abused its discretion.

We address each component of the four-factor test in turn.

## I.

Bosch argues that the district court committed legal error by establishing categorical rules in its irreparable injury analysis. Specifically, Bosch contends that the district court adopted per se rules that "the existence of additional competitors" and "the non-core nature of Bosch's wiper blade business in relation to its business as a whole" each independently preclude a finding of irreparable harm. Appellant's Br. 26. Bosch further argues

that, on this record, no court acting within its discretion could find an absence of irreparable harm. In this regard, Bosch points to evidence of: (1) loss in market share and access to customers; (2) Pylon's inability to satisfy a judgment; and (3) direct competition between it and Pylon in "each and every distribution channel in [the relevant] market." *Id.* at 26. According to Bosch, "decades of jurisprudence confirm that a patentee in [these] circumstances has suffered irreparable harm." *Id.* at 33.

In response, Pylon argues that the district court never concluded that "there *had* to be a two-supplier market" or that "the wiper blade business *had* to be at the core of Bosch's business in order for an injunction to be warranted." Appellee's Br. 27 (emphases in original). Instead, Pylon contends, the district court applied the "proper legal standard to the evidence presented and concluded, as a factual matter, that the evidence presented was inadequate to establish irreparable harm." *Id.* at 28.

While we agree that the district court did not establish categorical rules, we nevertheless conclude that the district court committed legal error by the weight given to the factors cited, and made a clear error in judgment in its analysis of the irreparable harm factor. Specifically, while facts relating to the nature of the competition between the parties undoubtedly are relevant to the irreparable harm inquiry, the court erred in relying exclusively on the presence of additional competitors and on the non-core nature of Bosch's wiper blade business. In addition, the court committed a clear error of judgment when it concluded that Bosch failed to demonstrate irreparable harm in the face of overwhelming evidence to the contrary. This is particularly true in light of Bosch's evidence of: (1) the parties' direct competition; (2) loss in market share and access to potential customers resulting

from Pylon's introduction of infringing beam blades; and (3) Pylon's lack of financial wherewithal to satisfy a judgment. Given these facts, there is "no basis on which the district court rationally could have" concluded that Bosch failed to show irreparable harm. *See Datascope*, 879 F.2d at 828. We first address the court's legal errors and then turn to the clear error of judgment.

A.

The court's first legal error lies in its conclusion that the presence of additional competitors, without more, cuts against a finding of irreparable harm. It is well-established that the "fact that other infringers may be in the marketplace does not negate irreparable harm." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005). As we explained in *Pfizer*, a patentee need not sue all infringers at once. *Id.* "Picking off one infringer at a time is not inconsistent with being irreparably harmed." *Id.* Were we to conclude otherwise, we would effectively establish a presumption against irreparable harm whenever the market contains a plurality of players. Under such circumstances, the first infringer sued could always point to the existence of additional competitors. And, perversely, if that infringer were to succeed in defeating an injunction, subsequent adjudged infringers could point to the market presence of the first infringer when opposing a request for an injunction. Consequently, without additional facts showing that the presence of additional competitors renders the infringer's harm reparable, the absence of a two-supplier market does not weigh against a finding of irreparable harm.

This principle, moreover, is not incompatible with the cases cited by the district court, in which courts found irreparable harm based, in part, on the absence of addi-

tional competitors. While the existence of a two-player market may well serve as a substantial ground for *granting* an injunction – e.g., because it creates an inference that an infringing sale amounts to a lost sale for the patentee – the converse is not automatically true, especially where, as here, it is undisputed that the patentee has sought to enforce its rights against other infringers in the market. The record reveals that Bosch has diligently pursued infringers since the time it first learned of Pylon's infringing beam blades. Once it became aware of the infringement, Bosch immediately notified Pylon's supplier requesting that it cease production of infringing blades, to which it agreed. Later, in October 2007, Bosch sued Jamak Fabrication-Tex Ltd. in the District of Delaware, alleging infringement of its beam blade patents. *See Robert Bosch LLC v. Jamak Fabrication-Tex Ltd.*, No. 07-cv-676 (D. Del.).

During the pendency of its suit against Jamak, Bosch learned that Pylon had started selling a new infringing product. Accordingly, in August 2008, three months after resolving its suit against Jamak, Bosch filed this action against Pylon. Bosch subsequently sued an additional competitor, Old World Industries, Inc., in March 2010 in the United States District Court for the Northern District of Illinois. *See Robert Bosch LLC v. Old World Indus.*, No. 10-cv-1437 (N.D. Ill.). For these reasons, the court erred in concluding that the absence of a two-player market effectively prohibits a finding of irreparable harm in this case.

## B.

The court also erred in relying on the "non-core" nature of Bosch's wiper blade business in relation to its business as a whole. As other courts have concluded, the fact that an infringer's harm affects only a portion of a

patentee's business says nothing about whether that harm can be rectified. *See, e.g.*, *Hoffman-LaRoche, Inc. v. Cobalt Pharma. Inc.*, No. 07-cv-4539, 2010 U.S. Dist. LEXIS 119432, at *36-37 (D.N.J. Nov. 10, 2010) ("Cobalt points to Roche's size and profitability, and the small impact the likely harms would have on Roche's overall profitability. That says nothing about whether such harms are irreparable."). Injuries that affect a "non-core" aspect of a patentee's business are equally capable of being irreparable as ones that affect more significant operations.

Under the district court's approach, for example, a large industrial corporation such as Bosch would find it easier to obtain an injunction if it subdivided its operations into child companies, with each focusing on a particular product line. Under such circumstances, Pylon's infringement would go to the core of the business of "Bosch Beam Blades LLC," which would increase the likelihood of irreparable harm. No one could seriously contend, however, that the irreparability of any particular injury should turn on incidental details such as a patentee's corporate structure. An injury is either of the irreparable sort, or it is not. Consequently, the district court erred in attributing weight to the non-core nature of Bosch's wiper blade business. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1330 (Fed. Cir. 2008) (Lourie, J., concurring) ("[A] patent provides a right to exclude infringing competitors, regardless of the proportion that the infringing goods bear to a patentee's total business.").

It is true that some courts have referenced the fact that the patented product is at the core of a party's business when explaining their bases for *granting* an injunction. *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 531 (D. Del. 2008) (granting a permanent injunction after finding that "[p]laintiffs are also frequently success-

ful when their patented technology is at the core of its business . . . ."). The trial court's error in relying on these cases again arises from its conclusion that, if a fact supports the granting of an injunction, its absence likely compels denial of one. That is not the law, however.

## C.

In addition to these legal errors, the district court committed a clear error in judgment when it concluded that Bosch failed to demonstrate irreparable harm. The record here contains undisputed evidence of direct competition in each of the market segments identified by the parties. Bosch also introduced unrebutted evidence of loss of market share and access to potential customers, as well as Pylon's inability to satisfy a judgment. The district court, however, did not address any of this evidence, but, instead, focused on: (1) the absence of a two-player market; (2) the non-core nature of Bosch's wiper blade business; and (3) Bosch's alleged failure to define a relevant market. In view of the entirety of the record, we are left with the firm conviction that there is no basis on which the district court rationally could have concluded that Bosch failed to demonstrate irreparable harm. We begin with an overview of the nature of competition between the parties before turning to the parties' arguments regarding harms arising from Pylon's competition with Bosch and Pylon's apparent inability to satisfy a judgment.

Although the parties dispute the finer details of the nature and extent of their competition, we agree with Bosch that the undisputed facts show that it competes with Pylon in all of the market segments identified by the parties. Neither Bosch nor Pylon sells directly to consumers. Instead, both offer their blades to intermediaries, who then sell the same to consumers. Before the district

court, Bosch identified three channels of distribution in the relevant market: (1) mass merchandisers, such as Wal-Mart; (2) automotive specialty retailers; and (3) original equipment manufacturers ("OEMs"). Pylon did not dispute the existence of these distribution channels, nor did it identify the existence of additional channels within the relevant market. Rather, it disputed the extent of competition in each of these three markets. Specifically, Pylon argued, as it does now, that: (1) Bosch sells original wiping systems to OEMs for installation on new vehicles, while Pylon does not; (2) Bosch has a great concentration of customers in automotive specialty retailers, while Pylon lacks "a significant beam blade presence" in this market; and (3) "Bosch does not sell any beam blades to mass merchandisers." Joint Appendix ("JA") 880. Thus, while the parties disputed the extent of competition within each distribution channel, there was no dispute regarding the contours of the relevant market. While Pylon now asserts that it does not agree "that these channels comprise the relevant market," Appellee's Br. 34, it still fails to identify any additional distribution channels, and we reject its belated attempt to create a dispute as to this issue.

With respect to the mass-merchandiser channel, it is undisputed that both parties have competed for Wal-Mart's business, which alone represents a substantial portion of not only the mass-merchandiser channel, but also the aftermarket as a whole. Both Bosch and Pylon approached Wal-Mart in 2006 in an attempt to secure its beam blade business, and Wal-Mart initially agreed to distribute Bosch's ICON beam blades beginning in April 2007. Bosch, however, failed to make a timely initial delivery and, when it requested an extension, Wal-Mart refused, choosing to sell Pylon's infringing product instead. Since losing the account, Bosch has made numer-

ous efforts to regain Wal-Mart's business and has even offered a new, cheaper blade in an attempt to compete with Pylon's lower prices. Thus, while it is true that Bosch has not succeeded in selling its beam blades in the mass-merchandiser channel, the evidence shows that it competes with Pylon for business with the largest participant in the aftermarket.

The record, likewise, shows direct competition in the aftermarket specialty store segment. Both parties have sold beam blades to AutoZone, and, although Pylon has had limited success in securing business from other specialty stores, it has competed against Bosch for business from at least five of AutoZone's competitors.

With respect to OEMs, Bosch sells its blades to most of the major car manufacturers, including BMW, Chrysler, Ford, General Motors, Hyundai, Mercedes Benz, Toyota, Volkswagen, and Volvo. Pylon admits that it has sold beam type wiper blades to at least one OEM, and has attempted sell beam blades to at least two additional manufacturers. The undisputed evidence, thus, demonstrates that the parties directly compete for customers in each of the relevant distribution channels.

Bosch argues that the harm caused by this competition is irreparable because it has suffered irreversible price erosion, loss of market share, loss of customers, and loss of access to potential customers. It also contends that Pylon's inability to satisfy a judgment renders its injury irreparable. As Bosch notes, the district court did not address any of these factors when concluding that an injunction should not issue.

In response, Pylon contends that, while "Bosch has preliminarily established that Pylon sells allegedly infringing beam blades, [it] has not established that Pylon's sales have had any definable impact on Bosch's sales of its

own beam blades." Appellee's Br. 37. According to Pylon, Bosch failed to prove that it was Pylon's competition, rather than that of other competitors, which caused it to suffer lost market share and price erosion. Pylon further argues that Bosch's evidence of Pylon's inability to pay is unsupported and speculative. We disagree.

While it is true that at least some of Bosch's loss of market share is attributable to other competitors, it is undisputed that it was Pylon that secured the Wal-Mart account, which alone accounts for a substantial portion of the entire market. Pylon argues that Bosch presumes "that Wal-Mart would turn to Bosch if Pylon were enjoined." Appellee's Br. 39. Bosch, however, makes no such presumption. Rather, Bosch relies on the fact that it previously secured the Wal-Mart account as circumstantial evidence that it would reclaim Wal-Mart's business were Pylon enjoined. While the party seeking an injunction bears the burden of showing lost market share, this showing need not be made with direct evidence. Here, Bosch made a prima facie showing of lost market share, and Pylon proffered no evidence to rebut that showing.

Pylon, likewise, failed to rebut the testimony of Bosch's Director of Product Management, Martin Kashnowski, regarding its loss of access to potential customers. *See* JA 954 ("[N]ot securing an account with Wal-Mart has made it much more difficult for Bosch to secure accounts with other mass-merchandisers, including Sears, Target and K-Mart. If Wal-Mart was carrying Bosch's beam blades, then its competitors would want to sell Bosch's beam blades as well to maintain a competitive position."). With respect to evidence of price erosion, although Bosch could have developed the effects of Pylon's conduct from that of other competitors more clearly, Mr. Kashnowski's testimony on this issue also stands unrebutted. Consequently, Pylon's arguments with respect to

the sufficiency of Bosch's evidence of lost market share, the loss of access to potential customers, and irreversible price erosion are not well-taken.[5]

As additional evidence of irreparable harm, Bosch introduced evidence showing that the financial condition of both Pylon and its corporate parent raised questions about Pylon's ability to satisfy a judgment. Specifically, Bosch submitted: (1) a Risk Management Report indicating that Pylon posed a "[m]oderate risk of severe financial stress, such a bankruptcy, over the next 12 months" and fell within the 49th percentile nationally in the category of "Financial Stress," JA 677; and (2) a public filing showing that Qualitor Inc., which holds 100% of Pylon's stock, obtained a five million dollar loan at a rate of 8.46%, JA827. In response, Pylon did not dispute the accuracy of these submissions, nor did it submit evidence demonstrating its ability to pay a damages award, either of past or future damages. Instead, Pylon responded with attorney speculation and argued that, if, "as Bosch alleges, Pylon sells so many beam blades, then there is little reason to suspect that Pylon will not have sufficient resources to pay a royalty to Bosch." JA 893.

While the burden of proving irreparable harm was of course Bosch's, Pylon's failure to submit rebuttal evidence regarding its ability to satisfy an award of money dam-

---

[5] Pylon also raises, for the first time on appeal, various challenges to the admissibility of the testimony of Bosch's officers under Rules 701 and 702. Because evidentiary objections not raised before the trial court are deemed waived, and we otherwise do not discern any plain error in the admission of this testimony, we do not accept Pylon's arguments. *See Failla v. City of Passaic*, 146 F.3d 149, 159-60 (3d Cir. 1998) (an evidentiary objection not raised before the district court is waived, and the admission of evidence is only reversible for plain error).

ages is troublesome given the procedural history of this case. Because the district court granted Pylon's motion to bifurcate damages, Bosch had no opportunity to obtain discovery relating to Pylon's financial condition, or that of its corporate parent before the court considered its request for injunctive relief. Consequently, facts relevant to Pylon's ability to satisfy a judgment were uniquely within its control. While Bosch's evidence of Pylon's inability to pay is not overwhelming – gleaned as it had to be from public records, in light of Pylon's failure to introduce any rebuttal evidence or to even argue below or to this court that Bosch's characterization of its financial status is inaccurate, and the unique procedural history of this case, we conclude that this factor favors a finding of irreparable harm.[6]

In view of the foregoing evidence, the record contains no basis on which the district court rationally could have concluded that Bosch failed to demonstrate irreparable harm or that a remedy other than injunction is sufficient

---

[6] During a lengthy discussion at oral argument on this issue, Pylon's counsel, when asked directly, could not offer express assurances that Pylon could satisfy a damages judgment and a prospective royalty payment. Oral Argument (July 7, 2011) at 25:56–26:18, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/pylon.html. In addition, when asked why Pylon did not produce evidence of its ability to satisfy a money damages judgment, Pylon's counsel said that, "our response is to argue, as we did to the district court, based on the evidence that was available, to make argument and then live with the decision that Judge Robinson ordered . . . ." *Id.* at 27:44–28:22. Pylon's counsel also contended, confusingly, that whether there was evidence "available" to show Pylon's ability to pay a judgment, and whether Pylon decided not to produce it, was a matter "we can and are debating." *Id.* at 29:28–36.

to address its harm.  Consequently, the court committed a clear error of judgment in analyzing this factor.

## II.

Turning to the remaining equitable factors, we conclude that, on balance, they also favor entry of a permanent injunction.

With respect to the adequacy of money damages, Bosch argues that it will continue to suffer irreparable harm due to lost market share, lost business opportunities, and price erosion unless Pylon is permanently enjoined.  According to Bosch, money damages alone cannot fully compensate Bosch for these harms.  We agree.  There is no reason to believe that Pylon will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction.  *Cf. Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (recognizing that "future infringement . . . may have market effects never fully compensable in money").  More importantly, the questionable financial condition of both Pylon and its parent company reinforces the inadequacy of a remedy at law.  A district court should assess whether a damage remedy is a meaningful one in light of the financial condition of the infringer before the alternative of money damages can be deemed adequate.  While competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those monetary payments helps define the circumstances in which this is so.  *See, e.g.*, *Canon, Inc. v. GCC Int'l Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. Jan. 25, 2008) (considering the improbability that the patentee could collect a money judgment as weighing in favor of an injunction);  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 04-cv-42, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), *vacated and remanded on other*

*grounds*, 521 F.3d 1351 (Fed. Cir. 2008) (finding that a plaintiff demonstrated the inadequacy of monetary damages because "all three defendants are foreign corporations and that there is little assurance that it could collect monetary damages").

Here, the only evidence of record is that Pylon likely will be faced with a substantial damages award for its past infringement and may be unable to pay even that. In the face of such evidence, the district court's failure to consider the extent to which a forward-looking monetary award is a viable or meaningful alternative to an injunction was error.[7]

We also conclude that the third factor, the balance of hardships, favors Bosch. Pylon argues that "Bosch is an international conglomerate with a diverse product base," whereas "Pylon is a small, domestic corporation that focuses on the manufacture and sale of wiper blades," such that the parties' respective size and business models demonstrate that an injunction would burden Pylon more than the absence of an injunction would harm Bosch. Appellee's Br. 58. We are not persuaded. A party cannot escape an injunction simply because it is smaller than the

---

[7] To the extent Pylon contends that we should remand this case so that it can develop evidence of its ability to pay a damages award, we are not persuaded. Pylon is uniquely in control of its own financial information, and it either could not or chose not to come forward with relevant information. The difficulties posed with respect to these issues are directly tied to the court's decision to bifurcate all of these issues for both discovery and trial. The circumstances here point out the dangers with a hard and fast rule regarding such bifurcation. It was Pylon, moreover, against Bosch's objection, that asked the court to bifurcate the damages portion of this case. It cannot now complain about the natural consequences of the procedure it asked the court to adopt.

patentee or because its primary product is an infringing one.  *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").  On the other hand, requiring Bosch to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on Bosch.  This factor, therefore, favors entry of an injunction in this case.

As to the public interest, we find that this factor is neutral.  Bosch argues that Pylon's inferior product "may potentially" compromise the public's safety, Appellant's Br. 43, but there is no support in the record for that assertion.  Although Bosch also cites its right to exclude and Pylon relies on its right to compete generally, neither party offers specific arguments as to why, in this case, the public interest would be served or disserved by an injunction.  Although this final factor does not favor either party, the remaining considerations lead to only one reasonable conclusion: that Bosch has shown that it is entitled to a permanent injunction.

Because the undisputed evidence conclusively shows that permanent injunctive relief is warranted in this case, we do not believe that remand of this matter is appropriate.  We agree with Bosch that, on the record as it stands, any alternative result on remand necessarily would be an abuse of discretion.  Remand is particularly inappropriate here because it would only delay relief to which Bosch currently is entitled.  Pylon has been competing against Bosch with a product that a jury has concluded infringes Bosch's valid patents, and it has done so for seventeen months since the jury's verdict and for nearly one year since the district court denied Bosch's motion for a permanent injunction.  It also has done so despite a record

which contains compelling evidence supporting injunctive relief in Bosch's favor. Further delay, which would amount to a stay of an injunction without a bond, would be inequitable.

We agree, as the dissent urges, that normally a district court should balance these equitable considerations in the first instance, but the facts of this case compel a different result. Unlike the cases on which the dissent relies, including *eBay* itself, where the district courts either could not have or did not apply the standard announced in *eBay*, the parties and the district court in this case were well aware of the *eBay* standard when developing and applying the record. Again, to the extent that bifurcation of the damages portion of the trial inhibited development of the record as it relates to injunctive relief, that was the result of Pylon's doing. Remanding the action for additional hearings prior to entry of injunctive relief would punish the patentee for the district court's decision, at Pylon's urging, to bifurcate the trial and for the district court's erroneous application of the law to the evidence before it. We cannot endorse that result.

CONCLUSION

For the foregoing reasons, and because we find that Pylon's remaining arguments are without merit, we reverse the district court's denial of Bosch's motion for entry of a permanent injunction and remand for entry of an appropriate injunction.

**REVERSED AND REMANDED**

COSTS

Costs are awarded to Bosch.

# United States Court of Appeals
# for the Federal Circuit

---

**ROBERT BOSCH LLC,**
*Plaintiff-Appellant,*

v.

**PYLON MANUFACTURING CORP.,**
*Defendant-Appellee.*

---

2011-1096

---

Appeal from the United States District Court for the District of Delaware in Case No. 08-CV-0542, Judge Sue L. Robinson.

---

BRYSON, *Circuit Judge*, dissenting in part.

I agree with the majority that the district court erred in its application of the *eBay* factors, and I therefore agree that we should not affirm the district court's order denying an injunction. However, I disagree with the majority's decision that the record compels the issuance of an injunction and I therefore dissent with respect to that aspect of this court's judgment.

Whether Bosch is entitled to injunctive relief is a fact-intensive inquiry that requires a careful balancing of competing equitable concerns, none of which is dispositive. The resolution of competing factual issues, such as

the sufficiency and persuasiveness of the evidence that Pylon's infringement has and will continue to have adverse effects on Bosch, is for the district court, which has tried the infringement portion of this case to verdict and is familiar with the record. I would therefore not direct the entry of an injunction, but would follow the ordinary course of remanding for the district court to decide whether an injunction should issue based on a proper application of the four-part test for granting permanent injunctive relief. *See eBay Inc v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) (remanding "so that the District Court may apply that framework in the first instance"); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351-52 (Fed. Cir. 2009) ("Although the district court did not consider the *eBay* factors, FMC nonetheless asserts that it made the required showing and that it is entitled to injunctive relief. However, we decline to analyze the eBay factors in the first instance."); *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007) ("If we were to weigh the evidence ourselves to reach a conclusion on injunctive relief, we would effectively be exercising our own discretion as if we were the first-line court of equity. That role belongs exclusively to the district court. Our task is solely to review the district court's decisions for an abuse of discretion.").

The majority concludes that on this record any decision by the district court to deny an injunction to Bosch would be an abuse of discretion. I disagree. In my view, there are enough open questions of fact bearing on the propriety of injunctive relief that we should not bypass the district court's consideration of those factual issues on remand.

First, there is an open question whether, and to what extent, Pylon and Bosch compete in the marketplace.

Evidence before the district court showed that Pylon is not the only competing manufacturer-distributor of beam wiper blades in the market. The majority points out that Bosch has sued several other manufacturer-distributors in addition to Pylon for patent infringement. With the exception of one case that has settled, however, the record does not reflect the outcome of those suits and thus it cannot be assumed that the other manufacturers actually infringe Bosch's patent rights. In addition, the evidence is unclear as to whether Pylon's presence in the beam blade market was, or continues to be, the reason that Bosch has not succeeded in its efforts to market its product to Wal-Mart, the largest aftermarket retailer of automotive parts. Thus, the proposition on which Bosch bases much of its argument—that Pylon's actions are inflicting irreparable harm by causing it to lose sales—is at least open to question and requires further factual development. The majority is correct that it is not enough for the district court simply to conclude that the beam blade market is not a two-competitor market and to deny injunctive relief on that ground. But to the extent the number of competitors and other characteristics of the market affect the impact of Pylon's sales on Bosch, those issues are important to Bosch's right to injunctive relief; those intensely factual issues should be given further consideration by the district court.

As the majority points out, Bosch contends that, in addition to the loss of market share, it has suffered irreparable harm in the form of price erosion, loss of customers, and loss of access to potential customers, issues on which the district court made no explicit findings. The majority concludes that Bosch made a prima facie showing on each of those issues and that because Pylon did not rebut that showing, those issues can be conclusively resolved against Pylon. I disagree with that approach to

the resolution of those factual issues. Bosch's evidence on those issues was far from compelling; it is certainly incumbent upon the district court to consider that evidence, and it may be that the district court will find it persuasive. But that evidence was not so clear-cut that those issues can be resolved based on a shifting of the burden of proof. The evidence presents factual issues for the district court to resolve, and we should direct that court to resolve those issues rather than reaching out to decide those issues ourselves without the aid of the pertinent factual analysis by the district court.

Finally, there is a live issue as to the effect of the size and diversity of the two parties: Bosch is large, and its wiper blade sales are only a small part of its business, while Pylon is small and wiper blades account for all of its sales. The district court regarded those facts as cutting against the issuance of an injunction on the ground that the economic impact of the lost sales would not result in irreparable harm to Bosch. The majority is correct that harm may be comparatively small but still irreparable—if, for example, Pylon is financially unable to compensate Bosch for its losses from Pylon's ongoing infringement. But the respective size of the two parties affects another factor bearing on whether the injunction should be granted: the balance of hardships. As to that issue, the majority simply says that a party cannot escape an injunction just because it is small, and that requiring Bosch "to compete against its own patented invention" is a hardship in itself. While that may be true so far as it goes, the respective impact of an injunction on the parties is an important equitable consideration, and the impact of the injunction on each party can be significantly affected by their respective size and the nature of their business. That is not to say that the balance of hardships will necessarily favor Pylon, but only that the considerations

to which Pylon points are legitimate factors bearing on the balance of hardships. It is the district court, not this court, that should consider those factors and weigh them in the overall equitable balance. To that extent, I respectfully dissent.